IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **LONNIE R. STROUD, JR.,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 7:13-CV-051-O-BL |
| | § § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § § | |
| **Defendant** | § | Assigned to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER OF REVERSAL AND REMAND**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lonnie R. Stroud, Jr. seeks judicial review of the Commissioner of Social Security's decision, which denied his applications for supplemental security income under Title XVI of the Social Security Act. All parties consented to the jurisdiction of the magistrate judge, and the case was reassigned to this Court in accordance with 28 U.S.C. § 636(c).

After considering the pleadings, the briefs, and the administrative record, this Court reverses the Commissioner's decision and remands for further consideration.

**Statement of the Case**

Following a hearing on November 14, 2012, an Administrative Law Judge (ALJ) determined on December 7, 2012, that Stroud was not disabled. Specifically, the ALJ held that Stroud's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that he had the residual functional capacity (RFC) to perform sedentary work with limitations, and that although he was not capable of performing his past relevant

work, he was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on March 5, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

**Factual Background**

Stroud filed an application for supplemental security income on July 29, 2011.[1] (Tr. 11, 45); (Def.'s Br. 2). Stroud claims he became disabled on January 1, 2010, due to multiple sclerosis (MS), anxiety, injury to his Achilles tendon, hypertension, panic attacks, manic depression, and obsessive compulsive disorder (OCD). (Tr. 30, 42, 43, 44, 45, 113, 131, 143, 181, 715). Previously, Stroud worked as maintenance personnel for a hotel, a mechanic, a loader/hauler, a driver, and an employee at Dairy Queen. (Tr. 29, 30, 37, 132, 144). Stroud has an 11th grade education and never obtained a GED.[2] (Tr. 2, 29). Stroud claims to have attended special education classes in high school. (Tr. 132, 144).

Medical records show that Stroud was treated between 2009 and 2012 for numbness and pain in his extremities, neck pain, carpel tunnel, chest pain, attempted suicide, multiple sclerosis, and an injured Achilles tendon. (Tr. 207-39, 498-509, 510-13, 545-47, 548-60, 565-80, 581-898). Medical records also indicate that Stroud has a history of mental illness, but psychiatric treatment records are not available for review. (Tr. 30, 42, 44, 45, 134, 143, 168, 181, 233, 237). Stroud claims his impairments prevent him from lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and using his hands, and also affect his memory,

---

[1] In his brief, Stroud states that he protectively filed for benefits on August 11, 2011. (Pl.'s Br. 2). This Court will review the case as if filing was made in July 2011.
[2] In disability reports, Stroud claimed to have only obtained a 10th grade education. (Tr. 132, 144). However, at the hearing, he claimed he completed 11th grade. (Tr. 29).

ability to complete tasks, and concentration. (Tr. 170).

The Agency ordered several Disability Determination Services (DDS) reviews of Stroud's ailments. (Tr. 192, 193-206, 476-89, 490-97, 514-18, 519-22, 523-36, 537-44). In April 2012, Stroud was ordered to attend a psychiatric consultative exam. (Tr. 514-18). During the exam, Dr. Richard Kownacki observed that Stroud had a general disheveled appearance; was unsteady and had general body weakness; had a hand tremor; was apprehensive; was slow in most activities—including speech; had a dysphoric mood with prominent anxiety and depression; did not display or report any overt psychotic behaviors; had poor short-term memory; and had poor attention and concentration. (Tr. 517-18). Based on his observations and evaluations, Dr. Kownacki diagnosed Stroud with (1) major depressive disorder of the recurring, moderate to severe type, (2) panic disorder with agoraphobia, (3) history of alcohol abuse, (4) cognitive disorder not otherwise specified—provisional, (5) MS as per Stroud's medical records, and (6) stress related to chronic unemployment. (Tr. 518). Dr. Kownacki opined that Stroud had a poor prognosis. (Tr. 518).

Notably, Stroud was ordered to attend three psychiatric review techniques, one in March 2011, the second in November 2011, and the third in April 2012. (Tr. 193-206, 523-36). In March 2011, Dr. Jean Germain, Ph.D., reported that there was insufficient information to make a medical disposition. (Tr. 193-206). In November 2011, Dr. Sarah Jackson, Ph.D., opined that although she had insufficient evidence, Stroud did suffer from depression and anxiety. (Tr. 476-89). In April 2012, Dr. Jim Cox, Ph.D., opined that Stroud suffered from affective disorders, recurrent severe panic attacks that manifest in a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom, obsessions or compulsions that cause distress, and depression. (Tr. 523-36). Dr. Cox also opined that Stroud had mild limitations in

activities of daily living, and mild difficulty maintaining social functioning. (Tr. 533). Stroud reportedly had moderate limitations in maintaining concentration, persistence or pace, but suffered no episodes of decompensation of extended duration. (Tr. 533).

Stroud underwent two physical RFC assessments, one in December 2011, and a reconsideration assessment April 2012. (Tr. 490-97, 537-44). In December 2011, Dr. Kelvin Samaratunga, M.D., opined that Stroud retained the capacity to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand or walk about 6 hours in an 8-hour work day, sit for a total of about 6 hours in an 8-hour work day, and push/pull an unlimited amount other than shown for lift/carry. (Tr. 491). Dr. Samaratunga also appreciated no additional limitations and noted that no Medical Source Statement (MSS) was on file at the time of the evaluation. (Tr. 492-97). In his April 2012 physical RFC reconsideration, Dr. Frederick Cremona, M.D. made the same findings as Dr. Samaratunga. (Tr. 537-44). In so doing, Dr. Cremona noted that follow up medical records indicated no significant worsening of Stroud's conditions, and that his alleged hand limitations are "not expected to last more than 12 months from the date of onset." (Tr. 544). Dr. Cremona further opined that Stroud retained the RFC to perform a full range of light work. (Tr. 544).

Stroud also underwent a mental RFC assessment in April 2012. (Tr. 519-22). Dr. Cox opined that Stroud retained the "capacity to understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings." (Tr. 521). Dr. Cox also stated that he believed Stroud's alleged limitations were not fully supported by the record. (Tr. 521).

Stroud's physician, Dr. Eugene Pak, provided DDS with an MSS of Stroud's MS. (Tr. 561-64). In this MSS, Dr. Pak reported that Stroud's prognosis was fair. (Tr. 561). Dr. Pak

reported that Stroud's symptoms included chronic fatigue, weakness, depression, difficulty remembering, unstable walking, pain, confusions, poor coordination, speech difficulties, problems with judgment, personality changes, and difficulty solving problems. (Tr. 561). Dr. Pak opined that these impairments can be expected to last at least 12 months and that Stroud had "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station." Tr. (561). Dr. Pak also stated that Stroud could only walk less than one block before suffering severe pain, that Stroud could sit for between 5 minutes and two hours, that he could stand for 5 minutes at one time, could sit/stand/walk no more than two hours in an 8- hour workday, would need a job that permits shifting positions at will, and would need unscheduled breaks up to twice daily for a duration of 20 minutes. (Tr. 562). Dr. Pak indicated that Stroud should rarely lift or carry 10 pounds or less, never lift or carry 20-50 pounds, and could rarely twist, stoop, crouch or squat. (Tr. 563). The report also specifies that Stroud could only make use of his upper extremities for 25% of the 8-hour workday. (Tr. 563). Notably, the report indicates that "emotional factors are [Stroud's] main limitation," specifically, that he was incapable of even low stress work. (Tr. 564).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452).

## Discussion

At issue on appeal is whether (1) the ALJ properly considered all the evidence in making his disability decision, and (2) whether the ALJ erred by not giving Stroud's treating physician's MSS controlling weight. (Pl.'s Br. 6-9).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Stroud was not disabled within the meaning of the Social Security Act. (Tr. 11-20). At Step 1, the ALJ found that Stroud did not engage in substantial gainful activity since July 29, 2011. (Tr. 13). At Step 2, the ALJ found that Stroud had the following severe impairments: Panic attacks, manic depression, MS, and OCD. (Tr. 13). At Step 3, the ALJ found that these impairments failed to meet or equal a listed impairment under the

applicable regulations. (Tr. 15). Before proceeding to Steps 4 and 5, the ALJ assessed Stroud's RFC and determined that he retained the ability to "perform sedentary work . . . except he cannot carry out detailed instructions." (Tr. 17). At Step 4, the ALJ determined that Stroud's impairments prevented him from performing any past relevant work. (Tr. 19). Finally, at Step 5, the ALJ found that Stroud's impairments did not prevent him from performing other work that exists in significant numbers in the national economy, and thus, Stroud was not disabled. (Tr. 19).

Because this Court finds for Stroud on his second point of error, the Court declines to address his first contention.

I.  **The ALJ Failed to Give Good Reason for not According Controlling Weight to Dr. Pak's Medical Source Statement**

In his second point of error, Stroud argues that the ALJ failed to accord the MSS by Dr. Pak proper weight. (Pl.'s Br. 7-9). For the following reasons, this Court agrees.

A treating physician is a physician who has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Generally, a treating physician is considered to be familiar with a claimant's impairments, treatments, and responses. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, a treating physician's opinion regarding the nature and severity of a claimant's impairments should be accorded great weight when determining disability if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237; *see* S.S.R. 96-2p, 1996 WL 374188, (Jul. 2, 1996) ("If a treating source's opinion is well-

supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."). Still, the ultimate disability decision lies with the ALJ, who is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990); *Newton,* 209 F.3d at 455. However, when a treating physician's opinion is rejected or given diminished weight, the ALJ must show good cause. *Newton,* 209 F.3d at 445; 20 C.F.R. § 416.927.

The record shows that Stroud visited Dr. Pak, a neurologist, on several occasions between July 2011 and June 2012, where Dr. Pak diagnosed, evaluated, and treated Stroud for MS, peripheral neuropathy, and carpel tunnel syndrome. (Tr. 498-509, 565-80). During the treatment relationship, Dr. Pak ordered various tests, such as lumbar punctures, EMGs, and MRIs, for further evaluation of Stroud's ailments. (Tr. 498-509, 565-80). Notably, Dr. Pak completed an MSS in June 2012 that discussed Stroud's functional limitations as a result of his MS. *See supra* Factual Background; (Tr. 561-64).

In his disability determination opinion, the ALJ's accorded great weight to the agency medical opinions. (Tr. 19). Nowhere does the ALJ discuss any reasons for according Dr. Pak's MSS less controlling weight; in fact, the ALJ does not discuss Dr. Pak's MSS at all. (Tr. 11-20).

**Conclusion**

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** in accordance with this opinion. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED** this 17th day of September, 2014.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE